UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONTINENTAL INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO: 18-2810 |
| BOLLINGER QUICK REPAIR, LLC, BOLLINGER AMELIA REPAIR, LLC, ROLLS-ROYCE NORTH AMERICA, INC. AND ROLLS-ROYCE ENERGY SYSTEMS, INC. | SECTION: "J"(5) |

## ORDER & REASONS

Before the Court are two *Motions for Partial Summary Judgment* **(Rec. Docs. 96, 97)** filed by Defendants, Rolls-Royce Marine North America, Inc., Bollinger Amelia Repair, LLC, and Bollinger Quick Repair, LLC; an opposition filed thereto by Plaintiff, Continental Insurance Company (Rec. Doc. 101); and a reply by Defendants (Rec. Doc. 105). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motions should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

In December 2015, the M/V OCEAN PIONEER, which was owned and operated by Hydra Offshore Construction, Inc. ("Hydra") and insured by Plaintiff Continental Insurance Company ("CNA"), was docked at the Gulf Copper shipyard in Port Arthur, Texas when a loose mooring line that was adrift in the harbor became tangled in the vessel's port and starboard propellors. Divers removed the line and found no underwater damage to the vessel. The vessel then performed two jobs

1

offshore without any problems. In February 2016, the vessel sailed to Defendant Bollinger's yard for drydocking and for inspection by the United States Coast Guard. During the inspection, the Coast Guard observed an oil sheen and required repairs before it would issue a new Certificate of Inspection.

Consequently, Hydra entered into an oral contract with Bollinger to repair the oil leak and refurbish and rebuild components of the vessel's controllable pitch propeller systems ("CPPS"). Bollinger subcontracted with Defendant Rolls-Royce, who designed and manufactured the vessel's CPPS, to perform some of the repair work. In March 2016, Bollinger and Rolls-Royce began the repair work, which concluded in December 2016. The vessel then departed Bollinger's shipyard for Port Arthur for testing of the vessel's CPPS and dynamic positioning system. While in transit, the CPPS allegedly began "hunting" due to hydraulic pressure fluctuations in the port side CPPS.

On March 10, 2017, Hydra put Bollinger on notice of its intent to pursue a claim for damage to the vessel's CPPS. On April 12, 2017, Hydra placed CNA on notice that it was abandoning the vessel and tendered the vessel to CNA as a constructive total loss. While CNA conducted its own investigation between June 1, 2017 and December 2018, Hydra was reimbursed by CNA for its sue and labor expenses incurred to moor and maintain the vessel; however, Hydra was not invoiced for these same services before or after those dates.

On March 16, 2018, CNA filed the instant lawsuit to recover the amounts that it was obligated to pay its insured, Hydra, for the damage to the vessel caused by

Bollinger's and Rolls-Royce's alleged failure to properly repair the vessel. On April 20, 2021, Defendants filed the instant motions for partial summary judgment, arguing that CNA's sue and labor expenses were not reasonably incurred as a result of an insured loss. (Rec. Docs. 96, 97).

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving

party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

It is undisputed that the hull insurance policy issued by CNA to Hydra included a sue and labor clause. Sue and labor clauses require an insurer to reimburse the insured for the costs incurred to prevent loss or mitigate damages. *St. Paul Fire & Marine Ins. Co. v. SSA Gulf Terminals, Inc.*, No. CIV.A. 01-3063, 2002 WL 31260153, at *4 (E.D. La. Oct. 8, 2002). Insurers began to include sue and labor clauses centuries ago in order to encourage insured parties to take steps to prevent threatened losses and mitigate losses if they occur. *Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 488 n. 11 (5th Cir. 1960). Even when the vessel is ultimately declared

a total constructive loss, the insurer is still required to reimburse sue and labor expenses. 12A *Couch on Insurance* § 183:162 (3d ed. 2020).

In this case, Defendants concede that the policy issued by CNA to Hydra required CNA to reimburse Hydra for any reasonably incurred expenses made to preserve the vessel and prevent further damage. (Rec. Doc. 96-1, at p. 3). However, rather than arguing that the expenses incurred were excessive, Defendants argue that CNA should not have reimbursed Hydra for any of its sue and labor expenses. Specifically, Defendants note that, from December 2016 to the present, the vessel has remained moored at the same location, but, from December 2016 through the end of May 2017, Hydra did not incur any charges or fees to moor or maintain the vessel. However, from June 1, 2017 through December 2018, Hydra was invoiced a total of $391,977.73 for mooring the vessel, shore power, security, daily vessel inspections, monthly engine start-ups and preservation, and storage of shafts and propellers by an entity known as Consolidated Ship Repair & Marine Fabrication, LLC ("Consolidated"), which was formed on May 1, 2017 by Trevor Davis, President of Hydra. Thus, Defendants argue that the sue and labor expenses incurred between June 2017 and December 2018 were not reasonable because Hydra was not charged before or after those dates for the same moorage and services.

It is irrelevant whether there were charges for mooring and servicing the vessel before the vessel had been tendered to CNA because the need to incur charges under the hull policy did not arise until after Hydra abandoned the vessel, tendered it to CNA, and requested it be deemed a constructive total loss. After Hydra had tendered

the vessel to CNA, CNA conducted its own investigation to decide whether it agreed with Hydra's assessment that the vessel should be declared a constructive total loss. During this time, the vessel needed to be moored and maintained in order to prevent any further damage.

Defendants argue that expenses to moor and maintain a vessel can only constitute sue and labor expenses under exceptional circumstances. Defendants assert that these expenses would have been incurred by Hydra in the ordinary course of business; however, the vessel would not have incurred these expenses if it had been operating rather than needing to be stored due to the damage allegedly caused by Defendants' negligent repairs. Further, sue and labor clauses cover any reasonable expenses incurred by the insured primarily for the benefit of the insurer to reduce or eliminate a covered loss. *Blasser Bros., Inc. v. Northern Pan–American Line*, 628 F.2d 376, 386 (5th Cir. 1980). By June 2017, the vessel had been abandoned by Hydra and tendered to CNA; therefore, any expenses incurred by Hydra to moor and maintain the vessel primarily benefitted CNA, not Hydra. Thus, it was reasonable for CNA to reimburse Hydra after it had tendered the vessel to CNA because these expenses were primarily incurred on its behalf.

After December 2018, Hydra was not invoiced for the vessel's moorage or maintenance because Consolidated or another affiliated entity purchased the vessel from CNA after CNA declared it a constructive total loss. (Rec. Doc. 96-20, at pp. 7-8). Despite Defendants' contentions, there is no reason that Hydra would incur expenses for storing a vessel that it or its insurer did not own. Accordingly, the Court

finds that CNA properly reimbursed Hydra for its expenses incurred between June 2017 and December 2018.

Defendants' remaining arguments regarding the ownership and management structure of Hydra and Consolidated are similarly unavailing. Notably, although Defendants make numerous assertions about Trevor Davis, Hydra, and Consolidated, the words "veil piercing" do not appear once throughout the entirety of Defendants' memoranda, nor do Defendants cite any legal authority to support a veil piercing argument. Further, even if Consolidated was an alter ego of Hydra or Trevor Davis, the Court is not convinced that charging CNA to moor and maintain the ship was unreasonable because, as explained above, the vessel had already been abandoned by Hydra and tendered to CNA.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motions for Partial Summary Judgment* **(Rec. Docs. 96, 97)** are **DENIED**.

New Orleans, Louisiana, this 18th day of May, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE